**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| MCCANN AEROSPACE MACHINING, LLC, a Delaware limited liability company, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. N16C-02-164 EMD CCLD |
| JOHN W. MCCANN, MCCANN AEROSPACE MACHINING CORPORATION, a Georgia corporation, MCCANN TECHNOLOGIES CORPORATION, a Georgia corporation, and ARMAGH CAPITAL RESOURCE LLC, a Georgia limited liability company, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Submitted:  June 22, 2016
Decided:  June 30, 2016

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS
COUNT I OF THE FIRST AMENDED COMPLAINT**

Gregory V. Varallo, Esquire, Kevin M. Gallagher, Esquire, Katherine L. Mowery, Esquire, and Andrew J. Peach, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, Andrew D. Gladstein, Esquire, and Michael E. Swartz, Esquire, Schulte Roth & Zabel LLP, New York, New York. *Attorneys for Plaintiff McCann Aerospace Machining, LLC.*

John A. Sensing, Esquire, and Jaclyn C. Levy, Esquire, Potter Anderson & Corroon LLP, Wilmington, Delaware, Stewart Clancy, Esquire, McGuire Woods LLP, Dallas, Texas, and Cheryl Haas, Esquire, McGuire Woods LLP, Atlanta, Georgia. *Attorneys for Defendants McCann Aerospace Machining Corporation, McCann Technologies Corporation, Armagh Capital Resource, LLC, and John W. McCann.*

**DAVIS, J.**

This 30th day of June, 2016, upon consideration of the First Amended Complaint filed by

Plaintiff McCann Aerospace Machining, LLC's ("McCann Aerospace") on February 22, 2016;

the Defendants' Motion to Dismiss Count I of the First Amended Complaint (the "Motion to

Dismiss") filed by Defendants McCann Aerospace Machining Corporation, McCann Technologies Corporation, Armagh Capital Resource, LLC, and John W. McCann's (collectively, "Defendants") on March 9, 2016; the Opening Brief in Support of Defendants' Motion to Dismiss Count I of the First Amended Complaint ("Defs.' Br.") filed on March 9, 2016; Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss Count I of the First Amended Complaint ("Pl.'s Opp.") filed on April 5, 2016; Defendants' Reply Brief in Support of Defendants' Motion to Dismiss Count I of the First Amended Complaint ("Defs.' Rep.") filed on April 20, 2016; the Court having held a Superior Court Civil Rule 16 status conference with the parties on June 22, 2016: and, the Court finding that no hearing is necessary on the Motion to Dismiss; it appears to the Court that:

1.      This is a civil action filed and assigned to the Complex Commercial Litigation Division.  The civil action arises from an asset sale dispute.  McCann Aerospace seeks damages for its purchase of an aerospace manufacturer's metal works business.  Relevant to this Order, McCann Aerospace claims Defendants fraudulently induced McCann Aerospace into buying the company by hiding the extent to which its machines and parts needed repairs and upgrading. Defendants claim McCann Aerospace's fraud claim fails because it was not plead with specificity under Superior Court Civil Rule 9(b).[1]  Defendants claim McCann Aerospace only plead fraud to supersede the parties' Asset Purchase Agreement's ("APA") indemnification cap.

2.      In August 2013, Defendants expressed an interest in selling their assets, including its aircraft manufacturing facility in Athens, Georgia (the "Facility").[2]  The Facility builds and

---

[1] Super Ct. Civ. R. 9(b) ("In all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.").
[2] Plaintiff's Amended Complaint ("Pl.'s Compl."), ¶21

supplies aircraft parts to business, commercial, and military entities.[3] The Facility uses massive precision metal-cutting machines with sophisticated drive and control systems.[4] The machines use spindles to hold tools with which to manufacture these parts.[5] Cooling systems drench the spindles to prevent overheating.[6] The machines also create piles of metal "chips," or debris, in the process.[7]

3.      McCann Aerospace was interested in buying the assets. The parties negotiated and did their due diligence for seven months.[8] McCann Aerospace visually inspected the Facility's machines several times prior to closing; they appeared to be operable.[9]

4.      On February 19, 2014, the parties executed the APA.[10] The APA included Schedule 3.06(a), a schedule of machines in need of repairs and upgrades.[11]

5.      McCann Aerospace bought Defendants' assets for $37 million. The APA capped McCann Aerospace's "Buyers Indemnified Losses" at $4.0 million.[12] The indemnification cap does not apply to fraud or intentional misrepresentation claims.[13] The transaction closed March 25, 2014.[14]

6.      After the closing, McCann Aerospace was "immediately deluged" with emails and phone calls from customers complaining of long-overdue deliveries.[15] McCann Aerospace then began an investigation into what was the source of the customer complaints. McCann Aerospace learned numerous machines were not properly maintained and were consistently shut

---

[3] *Id.* ¶17.
[4] *Id.* ¶19.
[5] *Id.* ¶48.
[6] *Id.* ¶49.
[7] *Id.* ¶44.
[8] *Id.*
[9] *Id.* ¶30.
[10] *Id.*
[11] *Id.* ¶28.
[12] APA at 42–44 (attached as Pl.'s Compl., Ex. 1).
[13] *Id.* at 47.
[14] Pl.'s Compl. ¶25.
[15] *Id.* ¶31.

down for non-routine maintenance.[16]  In the First Amended Complaint, McCann Aerospace claims that Schedule 3.06(a) misstated the number of defective machines.

7.      The First Amended Complaint alleges that Defendants fraudulently induced McCann Aerospace to buy the broken, dysfunctional machinery, including items not on Schedule 3.06(a).  In its entirety, McCann Aerospace's fraud claim states:

98.    Plaintiff repeats the allegations of paragraphs 1-97 as if fully set forth herein.

99.    Pursuant to Section 3.27 of the APA, Defendants had a duty to disclose material facts necessary to make the statements in the APA not misleading.

100.   Defendants violated their duty of disclosure when they knowingly and actively concealed significant problems that were plaguing the machines and represented and warranted that the machines were in reasonable operating condition for the purposes for which they were used.

101.   Defendants made the above representations with knowledge of their falsity.

102.   Defendants knew the true nature and extent of the issues causing the machines to fail, which were the subject of daily meetings and emails at the Company prior to Closing.

103.   To prevent Plaintiff from discovering the failing condition of the machines during Plaintiff's representatives' inspection, Defendants directed maintenance crews working on broken machines to vacate the factory floor prior to the inspection, and instructed Company employees to make critical machines that were down for repairs appear as if they were functioning properly while Plaintiff's representatives were on the premises.

104.   Defendants intended to induce Plaintiff's reliance on those misrepresentations and material omissions by causing Plaintiff to enter into the APA and pay more than the fair value of the Company.

105.   Plaintiff justifiably relied on the material misrepresentations and omissions made by Defendants.

---

[16] *Id.* ¶32.

4

106. As a result of Defendants' fraudulent conduct, Plaintiff was induced to pay more for the Company than it was worth and thereby has been injured in an amount to be determined at trial.[17]

8. McCann Aerospace claims that thirty minutes prior to a September 2013 inspection, maintenance employees cleared the floor.[18] A machine operator then shoveled "chips" from a functional machine to the broken one.[19] Moreover, during the inspection, employees removed the broken machine's chips, making it appear that it was being prepped for new work.[20]

9. Additionally, McCann Aerospace alleges Defendants' fraud was not limited to a single machine.[21] McCann Aerospace claims Defendants concealed broken machine spindles by soaking them in coolant.[22] Allegedly, Defendants directed a machine maintenance manager to attach tools to the broken spindles and turn on the machine's coolant system.[23] McCann Aerospace contends that this gave the appearance that the machines were functional.[24]

10. Defendants allege that McCann Aerospace's "complaint remains devoid of facts alleged with the necessary particularity."[25] Defendants claims McCann Aerospace "failed to plead sufficient details regarding the purported misrepresentations, including the identity of the person orchestrating the alleged fraud, and where or when such alleged fraudulent acts were conducted."[26] Defendants contend that Rule 9(b) of the Superior Court Civil Rules ("Civil Rule __") requires McCann Aerospace to plead, with particularity, the identification of *who* instructed Defendants' employees to perpetuate fraud, *where* and *when* the instruction(s) occurred, and

---

[17] *Id.* ¶¶98-106.
[18] *Id.* ¶45.
[19] *Id.*
[20] *Id.* ¶46.
[21] *Id.* ¶48.
[22] *Id.* ¶49.
[23] *Id.*
[24] *Id.*
[25] Defs.' Br., at 9.
[26] *Id.* at 10.

*which* machines with broken spindles were allegedly doctored by *which* alleged machine operators, even after amending its complaint.[27]

11.     When addressing a Civil Rule 12(b) motion to dismiss, the Court accepts all well-pleaded factual allegations as true, accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, draws all reasonable inferences in favor of the non-moving party, and only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[28]  However, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[29]

12.     In order for McCann Aerospace to survive a motion to dismiss a fraud claim, McCann Aerospace must factually allege:  (1) a false representation, usually of fact, made by Defendants; (2) the Defendants' knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intention to induce McCann Aerospace to act or to refrain from acting; (4) causing McCann Aerospace to take action or inaction in justifiable reliance upon the representation; and (5) damage to the McCann Aerospace as a result of such reliance.[30]

13.     In *Trenwick American Litigation Trust v. Ernst & Young, L.L.P.,*[31] plaintiff's fraudulent inducement claim, in its entirety, read:

> The directors of both parent and subsidiary acted together to: fraudulently conceal (a) [Trenwick America's] financial condition from 2000 to 2003; (b) the financial condition and reserve level problems at Chartwell prior to the 1999 merger; (c) the true nature of the intercompany payable supposedly due to Trenwick by Chartwell; (d) the actual value of the LaSalle transaction; and (e) the true value of

---

[27] *Id.* (emphasis in original).
[28] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* 2010 WL 5825343, at *3 (Del.Super. Oct. 27, 2010).
[29] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).
[30] *Gaffin v. Teledyne, Inc.,* 611 A.2d 467, 472 (Del. 1992).
[31] 906 A.2d 168 (Del. Ch. 2006).

the various TGI subsidiaries transferred between companies during the restructuring done in preparation for the LaSalle merger.

> As directors and/or officers of [Trenwick] and [Trenwick America], these defendants had a duty to disclose this information to Plaintiff. Plaintiff relied on these omissions to its detriment.[32]

14. The Court of Chancery dismissed plaintiff's fraudulent inducement claim because it failed to plead fraud with particularity. The Court, examining Chancery Rule 9(b),[33] stated:

> These allegations are precisely the sort of unspecific, broadbrush generalities that [Chancery] Rule 9(b) is intended to preclude from serving as a basis for a fraud claim. Notably absent from the complaint are particularized allegations identifying what aspect of [the] financial statements were tainted [...], when those financial statements were made public, and the circumstances that suggest that any inaccuracies were intentional.[34]

15. In *TrueBlue, Inc. v. Leeds Equity Partners IV, LP,*[35] plaintiffs sued over alleged fraudulent inducements in a stock purchase agreement.[36] Plaintiffs filed suit alleging, *inter alia*, fraudulent inducement. Plaintiffs alleged that the defendants' representations about what entity would pay an earn-out induced plaintiffs to enter into the agreement.[37] Defendants moved to dismiss the fraud claim for failure to meet Civil Rule 9(b)'s heightened pleading standards.

16. The *TrueBlue* Court denied defendants' motion to dismiss the fraud claim. The Court held:

> [T]he Amended Complaint alleges that in or about April 2014, Christopher Mairs (a Leeds representative) stated that the HRX Earn-out was Leeds' obligation and promised to pay it; and, that in or about April 2014, in Florida, Cartner Harned (Leed's lead negotiator) stated that "of course Leeds would pay [the HRX Earn-Out]." These allegations are sufficient to satisfy the Rule 9(b) particularity

---

[32] *Id.* at 208.
[33] Ch. Ct. R. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.")
[34] *Id.*
[35] 2015 WL 5968726 (Del. Super. Sept. 25, 2015).
[36] *Id.* at *1.
[37] *Id.*

requirement because the time, place, content, and speaker of the statements underlying Plaintiffs' fraud claim are clearly specified.[38]

17. The Court finds that Defendants' argument as to the pleading standard under Civil Rule 9(b) sets the bar too high. Civil Rule 9(b) does not require factual exactness.[39] Instead, all that is required to satisfy Civil Rule 9(b)'s pleading with particularity is "time, place, contents of the alleged fraud, as well as the individual accused of committing the fraud."[40]

18. The Court finds that paragraphs 43–49 and 98–106 of McCann Aerospace's Amended Complaint meet Rule 9(b)'s heightened pleading standard. McCann Aerospace discussed the time (in anticipation of McCann Aerospace's inspection); the place (the Facility's floor); the contents (placing chips and flushing spindles with coolant); and the individuals accused of committing the fraud (maintenance employees, specific machine operators, and supervisors).

19. For the foregoing reasons, Defendants' Motion to Dismiss Count I of the First Amended Complaint is **DENIED.**

**IT IS SO ORDERED.**

/s/ *Eric M. Davis*
Eric M. Davis, Judge

---

[38] *Id.* at *6.
[39] *See Universal Capital Management, Inc. v. Micco World, Inc.,* 2012 WL 1413598 (Del. Super. Feb. 1, 2012) (allowing thinly-plead fraud claim to survive a motion to dismiss even though "scant" details were plead).
[40] *TrueBlue, Inc.*, 2015 WL 5968726, at *6.